Thomas McCARTHY, Rosario Munguia, Robert A. Diem, Gail Carson, Patricia Schwartz, Robert Lynch, Kathleen Lynch, John Miller, Thomas Cunningham, Jeanette Budny, Austin Barrows, David Bejshak and Philip Karpovich, Plaintiffs,

v.

David W. HORNBECK, Superintendent of Schools of the State of Maryland; Joanne T. Goldsmith, Lawrence A. Miller, G. George Asaki, Mary Elizabeth Ellis, Albertine Thomas Lancaster, May Bolt, Verna Fletcher, Rosetta Kerr, Frederick Schoenbrodt, Members of the Maryland State Board of Education; Louis L. Goldstein, Comptroller of the Treasury; William S. James, Treasurer of the State of Maryland; David A. Wagner, Administrator of the Mass Transit Administration; Lowell K. Bridwell, Secretary of Transportation of the State of Maryland; John L. Crew, Sr., Superintendent of Public Instruction for the City of Baltimore, Maryland; Board of School Commissioners of the City of Baltimore, Md.; Edward J. Anderson, Superintendent of Schools of Anne Arundel County, Maryland; Board of Education of Anne Arundel County, Maryland; Robert Y. Dubel, Superintendent of Schools, Baltimore County, Maryland; Board of Education of Baltimore County, Maryland; A.A. Roberty, Superintendent of Schools of the Board of Education of Harford County, Maryland; Board of Education of Harford County, Maryland; J. Edward Andrews, Superintendent of Schools of the Board of Education of Montgomery County, Maryland and Board of Education of Montgomery County, Maryland, Defendants.

Civ. No. H–82–1485.

United States District Court, D. Maryland.

July 20, 1984.

Steven W. Tigges and Murphey, Young & Smith, Columbus, Ohio, and John J. Delaney and Linowes & Blocker, Silver Spring, Md., for plaintiffs.

Ellen M. Heller, Asst. Atty. Gen., Baltimore, Md., for defendant Hornbeck and for other State of Maryland defendants.

Ronald A. Karasic, Asst. City Sol., Baltimore, Md., for Baltimore City defendants.

Thomas J. Wohlgemuth and Smith & Wohlgemuth, Annapolis, Md., for Anne Arundel County defendants.

Donna P. Watts, Asst. County Atty., Towson, Md., for Baltimore County defendants.

Gerson B. Mehlman and Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., for Harford County defendants.

David C. Hjortsberg and Reese & Carney, Ellicott City, Md., for Montgomery County defendants.

ALEXANDER HARVEY, II, District Judge.

In this civil action, plaintiffs challenge the constitutionality of the system of transportation for nonpublic school children provided in the State of Maryland. Plaintiffs are parents of children who reside in various Maryland counties and who attend nonpublic, church-related schools. Named as defendants are the State Superintendent of Schools and various state and county officials, including the Superintendent and the Board of School Commissioners of Baltimore City and the Superintendents of and Boards of Education of Anne Arundel County, Baltimore County, Harford County and Montgomery County.

The complaint, as originally filed, asserted two claims under 42 U.S.C. Section 1983 based on (1) the Free Exercise Clause of the First Amendment, and (2) the Equal Protection Clause of the Fourteenth Amendment, and a third claim under the Urban Mass Transportation Act, 49 U.S.C. Section 1615 (hereinafter "the UMTA"). Pursuant to these claims, plaintiffs are here seeking declaratory and injunctive relief.

In a Memorandum and Order entered herein on June 2, 1983, plaintiffs' claim asserted under the UMTA was dismissed on the ground that no private right of action can be implied under that statute. The Court further ruled that plaintiffs' federal constitutional claims could not be determined by way of a motion to dismiss, and the Court directed the parties to develop the facts pertaining to the issues presented by way of discovery.

Thus, only plaintiffs' free exercise and equal protection claims remain for adjudication. Following extensive discovery, defendants indicated their intention to file motions for summary judgment. Presently before the Court are three motions for summary judgment filed by various defendants. A joint motion has been filed by the State, Anne Arundel County and Baltimore City defendants. The Harford County and Montgomery County defendants have adopted the arguments advanced in this motion and have also filed separate motions for summary judgment.

Voluminous memoranda, exhibits and affidavits in support of and in opposition to the three motions have been filed, and oral argument was heard in open court on June 1, 1984. The Court has now had an opportunity to review the entire record and to consider the arguments advanced by the parties in their briefs and at the hearing. For the reasons to be stated, defendants' motions for summary judgment will be granted.

I

### The Background Facts

As this Court noted in its Memorandum and Order of June 2, 1983, it is the responsibility of each county board of education in Maryland (including the Board of School Commissioners of Baltimore City)[1] to arrange for the transportation of public school students to and from "consolidated schools." Md.Educ.Code Ann. Section 4-119(b) (1983 Cum.Supp.). See also COMAR 13A.07.01. The school budget of the State of Maryland includes an appropriation to assist the counties in furnishing student transportation. Md.Educ.Code Ann. Section 2-205 (1983 Cum.Supp.). The amount of aid provided to each county is set forth in Section 5-203 of the Education Article. That Section establishes a specific dollar amount of aid for each county for fiscal

---

1. Twenty-four governmental units in the State of Maryland operate school systems, including twenty-three counties and the City of Baltimore.

References to "counties" in this Opinion will generally include the City of Baltimore.

year 1982 and contains an escalator clause for determining appropriations for subsequent years. A county may, at its own expense, provide more transportation services for public school students than is provided by the State. Md.Educ.Code Ann. Section 7–601 (1978).

There is no State law which relates to the providing of transportation services at public expense for private school students. However, in eleven of Maryland's twenty-four counties, local laws permit the extending of some such services to nonpublic school students at county expense.[2] The remaining thirteen counties have not authorized the use of public funds for the furnishing of transportation services to private school students.[3]

The counties which do not have public local laws concerning the transportation of nonpublic school students are now without power to enact legislation which would offer such services at county expense. In 1977, the Maryland Court of Appeals invalidated an attempt by Anne Arundel County to enact legislation which would provide transportation for nonpublic school students. *McCarthy v. Board of Education of Anne Arundel County,* 280 Md. 634, 374 A.2d 1135 (1977). The Court held in *McCarthy* that the field of education has been preempted by the General Assembly and that since transportation is an integral part of modern education, the home rule power of the counties did not extend to providing services of this sort. Under Maryland law then, legislative responsibility for dealing with the current pattern of disparate transportation services provided to nonpublic school students in Maryland rests with the General Assembly.

## II

### *The Free Exercise Claim*

Plaintiffs contend that the Maryland school transportation system places an impermissible burden on their First Amendment right to the free exercise of religion and therefore results in a denial of substantive due process guaranteed by the Fourteenth Amendment and 42 U.S.C. Section 1983. Specifically, plaintiffs claim that the program for transporting children to schools in effect throughout Maryland violates the Free Exercise Clause because it conditions eligibility for an otherwise available general welfare benefit upon the nonassertion of plaintiffs' right to send their children to private, church-related schools. In essence then, plaintiffs are here contending that if the State of Maryland or its counties do not pay for the cost of transporting plaintiffs' children to private, church-related schools, their First Amendment rights are infringed.

The Free Exercise Clause of the First Amendment to the United States Constitution states that Congress may not enact a law prohibiting the free exercise of religion. It is well settled that the Free Exercise Clause is fully applicable to the states. *See, e.g., Abington School District v. Schempp,* 374 U.S. 203, 215, 83 S.Ct. 1560, 1567, 10 L.Ed.2d 844 (1963); *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

■ Analysis of a free exercise claim begins with recognition of the fundamental proposition that the freedom to hold religious beliefs is absolute, whereas the freedom to act on those beliefs is not. *Braunfeld v. Brown,* 366 U.S. 599, 603, 81 S.Ct. 1144, 1145, 6 L.Ed.2d 563 (1961); *Forest Hills Early Learning Center, Inc. v. Lukhard,* 728 F.2d 230, 240 (4th Cir.1983). The Maryland school transportation system does not, of course, compel the acceptance of any creed or the practice of any form of worship. Rather, it is a facially neutral

---

**2.** The counties with public local laws permitting transportation of nonpublic school students are: Allegany, Baltimore County, Cecil, Charles, Frederick, Howard, Montgomery, Prince George's, St. Mary's, Talbot and Washington.

**3.** In the following thirteen counties, no statutory authority exists for providing transportation services to nonpublic school students: Anne Arundel, Baltimore City, Calvert, Caroline, Carroll, Dorchester, Garrett, Harford, Kent, Queen Anne's, Somerset, Wicomico and Worcester.

program which is being challenged on the ground that it unduly burdens plaintiffs' right to freely exercise their religion by not reimbursing plaintiffs for certain costs they incur when they send their children to private, church-related schools. Maryland's school transportation system for children will survive plaintiffs' constitutional attack if the Court determines (1) that the program does not infringe on plaintiffs' free exercise rights, or (2) that any incidental burden on said rights is justified by a compelling state interest. *Wisconsin v. Yoder,* 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner,* 374 U.S. 398, 403, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963). For the reasons to be stated, this Court finds and concludes that the operation of the school transportation system in effect in Maryland for nonpublic school children does not infringe plaintiffs' First Amendment rights.

As the Fourth Circuit recently observed: Whether state law impinges at all upon free exercise rights first depends upon whether "the purpose or effect of [the] law is to impede the observance of ... religion [ ]." *Sherbert v. Verner,* 374 U.S. 398, 404 [83 S.Ct. 1790, 1794, 10 L.Ed.2d 965]... Whether, in turn, the holding or active expression of particular beliefs involves the observance of "religion" depends upon the sincerity ·of the beliefs held and the centrality of those beliefs to an identifiable religious faith or commitment; only those laws that impede the holding or active expression of sufficiently sincere and central religious beliefs impinge upon free exercise rights.

*Lukhard, supra.*

Defendants first argue that they are entitled to summary judgment because plaintiffs' decision to send their children to parochial schools is a matter of personal preference rather than religious belief.[4] In sup-

port of their position, defendants rely on excerpts from depositions of plaintiffs wherein plaintiffs admitted (1) that the Catholic Church does not require plaintiffs to send their children to parochial schools; (2) that if plaintiffs' children were to attend public schools, they would be able to receive religious training at Confraternity of Christian Doctrine classes; and (3) that plaintiffs send their children to parochial schools because they believe that more thorough religious training will be obtained in such an environment.

By way of response, plaintiffs argue that the issue here is not whether parochial school attendance is a tenet of Catholicism but whether plaintiffs believe that they should send their children to Catholic schools. Plaintiffs assert that they feel obligated to fulfill marital and baptismal vows made by them to entrust the education of their children to Catholic institutions.

The Court will not undertake to resolve the question whether plaintiffs' decision to send their children to private, parochial schools is or is not rooted in. religion. As the Supreme Court pointed out in *Thomas v. Review Board,* 450 U.S. 707, 715, 101 S.Ct. 1425, 1430, 67 L.Ed.2d 624 (1981), the judicial process is singularly ill equipped to resolve in First Amendment cases differences in practices among .followers of a particular creed. Accordingly, in analyzing plaintiffs' free exercise claim, the Court, for the purposes of this case, will assume that plaintiffs' practice of sending their children to Catholic schools is a matter of religious belief.

 With that assumption in mind, the Court will address the first theory on which plaintiffs' free exercise claim is based. In *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), the Supreme Court struck down as viola-

---

**4.** The Montgomery County defendants contend that plaintiffs lack standing to assert claims against them inasmuch as the decision of plaintiff Munguia to send her son to public school has rendered moot the claims asserted here against them. In view of this Court's conclu-

sion that the Maryland student transportation system violates neither the Free Exercise Clause nor the Equal Protection Clause, there is no need to address herein these issues of standing and mootness.

tive of the Fourteenth Amendment an Oregon statute which required public school attendance for children between the ages of eight and sixteen. Essentially, the Court reasoned that the statute unreasonably interfered with the interests of parents and guardians in directing the rearing and education of the children under their control. *Pierce* was reaffirmed in *Wisconsin v. Yoder, supra.* The Supreme Court in *Yoder* held that the Free Exercise Clause prohibited the State of Wisconsin from compelling members of the Amish religion to send their children to school until the age of sixteen. Under *Pierce* and *Yoder*, then, there is little doubt that plaintiffs here have a constitutional right to enroll their children in private, parochial schools. The question presented here is whether a state is constitutionally required to subsidize the transportation of those children to those schools.

Plaintiffs argue that the Maryland school transportation system violates the First Amendment by conditioning receipt by plaintiffs of a general welfare benefit upon the non-assertion of their so-called *Pierce-Yoder* right. This contention is based on two decisions of the Supreme Court, namely *Thomas v. Review Board, supra,* and *Sherbert v. Verner, supra.*[5]

In *Sherbert,* the Supreme Court ruled that the denial of unemployment benefits to a Seventh Day Adventist who refused to work on Saturdays violated the Free Exercise Clause. Relying in large part on *Sherbert,* the Court in *Thomas* held unconstitutional the denial of unemployment benefits to a Jehovah's Witness who refused to accept employment in weapons-related work. The Court explained that:

[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden on religion exists. 450 U.S. at 717–718, 101 S.Ct. at 1431–32.

Plaintiffs contend that *Thomas* and *Sherbert* are controlling here because student transportation is a general welfare benefit similar to unemployment compensation. In support of their position, plaintiffs rely on *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), wherein the Supreme Court determined that a state may voluntarily provide transportation to nonpublic school students without violating the Establishment Clause of the First Amendment. However, the Establishment Clause prohibits a State from enacting a law "respecting the establishment of religion." As distinguished from the Free Exercise Clause, the purpose of the Establishment Clause is to erect a wall of separation between church and state. In *Everson,* the Supreme Court reviewed the restrictions imposed by the Establishment Clause on the states and the federal government as follows:

Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force or influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion... No tax in any amount, large or small, can be levied to support any reli-

---

5. Plaintiffs also rely on *State Ex Rel. Hughes v. Board of Education,* 154 W.Va. 107, 174 S.E.2d 711 (1970). In *Hughes,* the West Virginia Supreme Court of Appeals held that a statute granting to county boards of education authority to provide at public expense transportation "for all children of school age" required the extension of transportation services to parochial school students. Plaintiffs' reliance on *Hughes* is misplaced for two reasons. First, as noted, the statute at issue in *Hughes* specifically provided for the extension of transportation services to *all* children of school age, whereas the State of Maryland has elected to provide transportation services only to public school pupils. Secondly, a later West Virginia case, *Janasiewicz v. Board of Education,* 299 S.E.2d 34 (W.Va.1982), makes it clear that the First Amendment aspect of the *Hughes* decision was based on the Establishment Clause. The issue before this Court is whether the Free Exercise Clause mandates the providing of transportation services to private school students.

gious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and *vice versa.* 330 U.S. at 15–16, 67 S.Ct. at 511.

Applying these principles, the Supreme Court concluded in *Everson* that the decision of the State of New Jersey to provide transportation to nonpublic school students did not constitute the sort of governmental entanglement with religion that is prohibited by the Establishment Clause. Central to the Court's ruling was its determination that transportation, like fire and police protection, is free of religious trappings.

Plaintiffs here contend that the Supreme Court's holding in *Everson* compels the conclusion that in a case involving a free exercise claim, school transportation services must be considered to be a general welfare benefit like unemployment compensation. Plaintiffs further argue that such a conclusion is supported by evidence in the record indicating that child safety is a major consideration in the funding and implementation of Maryland's school transportation program.

After carefully reviewing the pertinent cases in the light of the record here, this Court finds and concludes that, as a matter of law, *Thomas* and *Sherbert* are not controlling in this case. School transportation services are not a general welfare benefit.

The child benefit theory invoked by plaintiffs here was rejected in *Luetkemeyer v. Kaufman,* 364 F.Supp. 376 (W.D.Mo.1973), *aff'd,* 419 U.S. 888, 95 S.Ct. 167, 42 L.Ed.2d 134 (1974). *Luetkemeyer* was a suit challenging the constitutionality of various Missouri statutes which provided transportation only to public school pupils. Plaintiffs there claimed that the State's school transportation program violated their equal protection and free exercise rights. As in this case, plaintiffs in *Luetkemeyer* argued that transportation was a public service benefiting children and their parents, and that such a service could not constitutional-

ly be withheld from parochial school students. In *Luetkemeyer,* plaintiffs relied on *Everson, supra,* and also on *Board of Education v. Allen,* 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968). In *Allen,* the Supreme Court, relying on *Everson,* upheld against a First Amendment attack New York's policy of lending textbooks free of charge to both public and nonpublic school students in grades seven through twelve.

In an opinion written by Judge Oliver, the three judge panel in *Luetkemeyer* determined that the Missouri school transportation program passed constitutional muster. Before addressing plaintiffs' specific claims asserted under the First and Fourteenth Amendments, the Court explained that plaintiffs' reliance on *Everson* and *Allen* was misplaced:

> The "child benefit theory" must be considered in the context of the cases which required the Court to define permissible areas of State aid to religious institutions. The language of those cases may not be taken out of context to support the notion that a State *must* provide transportation for all pupils, regardless of whether they attend a religious or public school. We do not suggest that the fact that state benefits are distributed to children rather than to schools, and the fact that the benefit is essentially nonreligious in character may not be relevant in regard to proper analysis of other constitutional questions presented in this case; we conclude only that the "child benefit theory," as set out in *Everson* and *Allen,* standing alone, does not support plaintiffs' basic contention. (Emphasis in original).

364 F.Supp. at 381. The Court went on to hold that any possible infringement of plaintiffs' free exercise rights resulting from the denial of transportation services to parochial students was justified by Missouri's interest in maintaining a policy of strict separation of church and state. *Luetkemeyer* was affirmed by the Supreme Court without opinion but with Justice White and the Chief Justice dissenting. 419 U.S. 888, 95 S.Ct. 167, 42 L.Ed.2d 134.

Whether or not *Luetkemeyer* is binding precedent, this Court is in full agreement with the conclusions therein reached.[6] As the Court held in *Luetkemeyer*, *Everson* does not stand for the proposition that school transportation is a general welfare benefit which must be provided to all students. *Everson* was an Establishment Clause case and, as such, it held merely that a state *may* provide transportation services to nonpublic school students. As noted in *Luetkemeyer*, "[p]rinciples which state what a State *may* do may not properly be read as a command to what a State *must* do." 364 F.Supp. at 381 (Emphasis in original). This Court concludes that plaintiffs' reliance on *Everson* is misplaced.

■ Moreover, there are other reasons why *Thomas* and *Sherbert* are inapplicable here. Both cases involved the denial of unemployment compensation, a benefit which can be obtained only from the State. Here, however, there is no dispute that plaintiffs may arrange for alternative transportation services for their children. This Court accordingly concludes that providing transportation services for school children is not a general welfare benefit like unemployment compensation. The mere fact that the safety of children is involved does not transform such services into a general welfare benefit for purposes of consideration by a court of a free exercise claim. For these reasons, this Court finds and concludes that *Thomas* and *Sherbert* are inapposite to this case.

■ Having concluded that plaintiffs' general welfare benefit theory is without merit, the Court will now address the next question presented, namely whether Maryland's student transportation program impermissibly burdens plaintiffs' free exercise rights. As previously noted, to pass constitutional muster, Maryland's system of school transportation either must not interfere with, burden or deny the free exercise of plaintiffs' legitimate religious

beliefs or must be justified by a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause. *Wisconsin v. Yoder, supra* 406 U.S. at 214, 92 S.Ct. at 1532; *Sherbert v. Verner, supra* 374 U.S. at 403, 83 S.Ct. at 1793. If the transportation program imposes no burden or a *de minimis* burden on plaintiffs' First Amendment rights, the Court need not even address the issue whether the program furthers a compelling state interest. *See Walsh v. Louisiana High School Athletic Association*, 616 F.2d 152, 158 (5th Cir. 1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981); *Valencia v. Blue Hen Conference*, 476 F.Supp. 809, 822 (1979) *aff'd*, 615 F.2d 1355 (3d Cir. 1980).

The burden imposed on plaintiffs here is essentially an economic one. Plaintiffs claim that the burden is substantial in that it involves both safety and financial concerns. In support of their position, plaintiffs stress that they all stated in their depositions that they were concerned over the safety of their children. Plaintiff Thomas McCarthy, for example, testified that he felt that the transportation he provides to his children is less safe than that provided to public school students by the State of Maryland. After considering the depositions and other matters of record here, this Court concludes that in spite of the safety concerns voiced by the plaintiffs, the burden on plaintiffs' First Amendment rights is essentially economic in nature. There is little doubt that plaintiffs could, at their own expense, arrange for transportation services which are comparable in terms of safety to those currently being provided to public school students. Plaintiffs already incur additional tuition and other costs because they have elected to send their children to private schools. It could hardly be contended that Maryland is constitutionally required to pay these additional expenses. The Maryland school

---

**6.** In its Memorandum and Order of June 2, 1983, this Court concluded that *Luetkemeyer* did not compel dismissal of the complaint at that early stage of the case. Now that the facts have

been fully developed by way of discovery, this Court is satisfied that the principles enunciated by the Court in *Luetkemeyer* are fully applicable here.

transportation system does no more than merely increase the cost to plaintiffs of sending their children to church-related schools. The question presented is whether this increased economic burden constitutes an infringement of plaintiffs' free exercise rights.

■ In *Braunfeld v. Brown, supra,* the Supreme Court held that a Pennsylvania criminal statute which banned the retail sale on Sundays of certain commodities did not violate the free exercise rights of merchants who, as Orthodox Jews, observed the Sabbath on Saturday. Noting that the statute at issue merely regulated a secular activity, the Court determined that the incidental economic burden imposed on the appellants was not violative of the First Amendment. The Court observed that "it cannot be expected, much less required, that legislators enact no law regulating conduct that may in some way result in an economic disadvantage to some religious sects and not to others because of the special practices of the various religions." 366 U.S. at 606, 81 S.Ct. at 1147. Under *Braunfeld,* a statute or statutory scheme does not violate the Free Exercise Clause merely because it operates so as to make more expensive the practice of their religious beliefs by some persons. *Id.* at 605, 81 S.Ct. at 1146.

Relying on *Braunfeld,* the Sixth Circuit Court of Appeals recently held that an indirect economic burden similar to the one imposed on plaintiffs here did not violate the Free Exercise Clause. *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio,* 699 F.2d 303 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983). In *City of Lakewood,* the Court rejected a First Amendment challenge to a municipal zoning ordinance which prohibited the construction of church buildings in virtually all residential districts in the City of Lakewood. After reviewing *Yoder, Sherbert* and *Braunfeld,* the Sixth Circuit concluded that the ordinance in question did not impinge on appellants' free exercise rights:

The Supreme Court's statement in *Braunfield* [sic] accurately summarizes our conclusion about the nature of the City's burden on that interest. The Lakewood ordinance "simply regulates a *secular activity* and, as applied to the appellants, operates so as to make the practice of their religious beliefs *more expensive.*" 366 U.S. at 605 [81 S.Ct. at 1146]... (emphasis added). It does not pressure the Congregation to abandon its religious beliefs through financial or criminal penalties. Neither does the ordinance tax the Congregation's exercise of religion. Despite the ordinance's financial and aesthetical imposition on the Congregation, we hold that the Congregation's freedom of religion, as protected by the Free Exercise Clause, has not been infringed.

699 F.2d at 307–308.

In *Walsh v. Louisiana High School Athletic Association, supra,* the Fifth Circuit likewise upheld against a First Amendment attack a student transfer rule promulgated by the defendant athletic association. The rule provided that upon completion of junior high school, a student could participate in interscholastic athletic competition only at a high school located within his home district. If a student matriculated at a high school situated outside his home district, the transfer rule prohibited him from participating in interscholastic athletics for a period of one year. The purpose of the rule was to discourage the recruitment of promising young athletes.

In *Walsh,* a suit challenging the constitutionality of the transfer rule had been filed by parents of children attending the only Lutheran-affiliated high school in the New Orleans metropolitan area. While there were seven Lutheran elementary schools in the region, there were none in the designated home district of the Lutheran high school. Plaintiffs' children had graduated from Lutheran lower schools, had enrolled at the Lutheran high school and had been declared ineligible for interscholastic athletic competition during their ninth grade year. Plaintiffs argued, *inter alia,* that

the transfer rule violated their free exercise rights.

The Fifth Circuit held that any incidental burden on plaintiffs' First Amendment rights was not of constitutional dimension:

> The encroachment of the transfer rule on the free exercise of religion is both limited in scope and insignificant in magnitude. The transfer rule does not deny these parents or their children the right to actively practice the Lutheran faith. Similarly, it neither prohibits a parent from enrolling his child in Lutheran High School nor interferes with the ability of such a child to obtain the religious education provided by that school. The rule merely prevents a child from participating in interscholastic athletic competition during his ninth grade year.... The burden placed on the free exercise of religion is *de minimis*.

616 F.2d at 158.

As in both *City of Lakewood* and *Walsh*, Maryland's transportation system for non-public school children places at most an indirect economic burden on plaintiffs' right to freely exercise their religion. The State of Maryland has not prohibited plaintiffs from practicing Catholicism. Indeed, it is undisputed that there has never been any effort on the part of State or local officials to prevent plaintiffs from sending their children to parochial schools. Maryland's system of not using State funds to pay for the transportation costs of children attending private schools simply operates so as to make the practice of plaintiffs' religious beliefs more expensive. As did the Courts in *City of Lakewood* and *Walsh*, this Court concludes that *Braunfeld* is controlling here as to plaintiffs' free exercise claim. Accordingly, this Court finds and concludes that the Maryland school transportation system does not infringe plaintiffs' free exercise rights and that there is therefore no need to determine whether the program furthers a compelling state interest. *See also, Valencia v. Blue Hen Conference, supra* (denying plaintiffs' motion for a preliminary injunction because plaintiffs had failed to demonstrate that they were likely to prevail on their claim that their free exercise and equal protection rights had been violated by the exclusion of a sectarian high school from the defendant high school association); *Thomas v. Allegany County Board of Education*, 51 Md.App. 312, 443 A.2d 622 (1982) (decision of Allegany County to limit participation in music program to public school students did not infringe the free exercise rights of parochial school students.)

In essence, plaintiffs are here seeking a state subsidization of a part of the cost of sending their children to private, church-related schools. The Supreme Court has consistently held that a statute does not impinge on a constitutional right merely because it does not subsidize that right. In *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977), the Supreme Court, in holding that a Connecticut Medicaid regulation did not impinge on the fundamental right of privacy which had been recognized in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), said the following: "The State may have made childbirth a more attractive alternative, thereby influencing the woman's decision, but it has imposed no restriction on access to abortions that was not already there." 432 U.S. at 474, 97 S.Ct. at 2382. *Maher* was reaffirmed in *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), where the Supreme Court in an opinion by Justice Stewart noted that "[a] refusal to fund protected activity, without more, cannot be equated with the imposition of a 'penalty' on that activity." 448 U.S. at 317, n. 19, 100 S.Ct. at 2688, n. 19. The Court explained in *McRae* that "[a]lthough the liberty protected by the Due Process Clause affords protection against unwarranted government interference with freedom of choice in the context of certain personal decisions, it does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom." *Id.* at 317–318, 100 S.Ct. at 2688. More recently, in *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129

946

(1983), the Supreme Court reiterated its rejection of the " 'notion that First Amendment rights are somehow not fully realized unless they are subsidized by the State.' " 103 S.Ct. at 2001, 76 L.Ed.2d at 137, quoting *Cammarano v. United States*, 358 U.S. 498, 515, 79 S.Ct. 524, 534, 3 L.Ed.2d 462 (1959) (Douglas, J. concurring). *See also, Maryland Public Interest Research Group, Inc. v. Elkins*, 565 F.2d 864, 867 (4th Cir.1977), *cert. denied*, 435 U.S. 1008, 98 S.Ct. 1879, 56 L.Ed.2d 390 (1978).

Applying these principles to this case, this Court concludes that, as a matter of law, defendants here are entitled to summary judgment as to plaintiffs' free exercise claim. Subsidization by the State of Maryland of plaintiffs' constitutional right to send their children to church-related schools is not mandated by the First Amendment. Plaintiffs' claim that Maryland's school transportation system places an impermissible burden on their First Amendment rights is therefore without merit.

## III

### *The Equal Protection Claim*

Plaintiffs also assert that the Maryland school transportation system violates the Equal Protection Clause of the Fourteenth Amendment. The complaint presents two equal protection contentions, first that the transportation program discriminates between public and nonpublic school students, and secondly that the program discriminates between nonpublic school pupils in particular counties, in some of which the State does not permit the County to pay for the transportation of such students while in others it does.

In its Memorandum and Order of June 2, 1983, the Court determined that the so-called rational or reasonable basis test must be applied to plaintiffs' equal protection claim. In *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), the Supreme Court described this test as follows:

In the area of economic and social welfare, a State does not violate the Equal Protection Clause merely because the classification made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed.2d 369]. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730]. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426 [81 S.Ct. 1101, 6 L.Ed.2d 393].

Under the rational basis test, it is presumed that the legislation under attack is valid and the burden of proving otherwise must be assumed by the challenging party. *McGowan v. Maryland*, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961); *Loving v. Virginia*, 388 U.S. 1, 9, 87 S.Ct. 1817, 1822, 18 L.Ed.2d 1010 (1967). Thus, plaintiffs here must bear the onerous burden of convincing this Court " 'that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.' " *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 723, 66 L.Ed.2d 659 (1981), quoting *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).

The Court would first note that in asserting their equal protection claim, plaintiffs have overlooked the Supreme Court's decision in *Norwood v. Harrison*, 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973). In *Norwood*, the Supreme Court held that the Constitution prohibited the State of Mississippi from lending textbooks free of charge to private schools which had racially dis-

criminatory policies. In reaching its decision, the Court rejected the appellees' suggestion that the State's denial of free textbooks to private schools would infringe the right of parents under *Pierce* to send their children to private schools:

We do not see the issue in appellees' terms. In *Pierce,* the Court affirmed the right of private schools to exist and to operate; it said nothing of any supposed right of private or parochial schools to share with public schools in state largesse, on an equal basis or otherwise. It has never been held that if private schools are not given some share of public funds allocated for education that such schools are isolated into a classification violative of the Equal Protection Clause. It is one thing to say that a State may not prohibit the maintenance of private schools and quite another to say that such schools must, as a matter of equal protection, receive state aid.

The appellees intimate that the State *must* provide assistance to private schools equivalent to that which it provides to public schools without regard to whether the private schools discriminate on racial grounds. Clearly, the State need not. Even as to church-sponsored schools whose policies are nondiscriminatory, any absolute right to equal aid was negated, at least by implication, in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

413 U.S. at 462, 93 S.Ct. at 2809.

*Norwood* thus makes it clear that the Equal Protection Clause does not require the State of Maryland to give financial assistance to parochial schools. Providing student transportation services is, of course, a form of financial assistance. *Norwood* indicates that as a matter of law plaintiffs' first equal protection argument is without merit.

Whether or not *Norwood* is controlling here, neither of plaintiffs' equal protection challenges can survive the applicable rational basis test. Plaintiffs' two-pronged equal protection claim presents the question whether the pattern of disparate transportation services provided by counties to nonpublic school students in Maryland reasonably promotes a valid State objective. As noted, plaintiffs have the burden of demonstrating that Maryland's transportation system is wholly irrelevant to the achievement of a legitimate State goal. After reviewing the pleadings, exhibits and other matters of record here which have been fully developed by way of discovery, this Court finds and concludes that plaintiffs cannot possibly sustain their heavy burden.

Various grounds have been relied upon by defendants as constituting reasonable bases for the State's decision to provide transportation services only to public school students, namely (1) the need to conserve limited financial resources; (2) the promotion of a public education system; (3) the continuation of county participation in the school transportation system; (4) the provision of transportation to children attending consolidated public schools; and (5) the maintenance of a strict separation between church and state. Affidavits of and depositions of various County and State officials support defendants' position.

There is no need to discuss each of these asserted bases separately. This Court finds and concludes that the system of school transportation currently in effect in Maryland is rationally related to the State's valid goal of conserving limited financial resources. Although education represents the largest single category of expenditures made by the State, it is only one of many governmental services provided in Maryland. Many competing demands are made on the State's treasury, and in formulating a budget, the legislature must set priorities and allocate funds accordingly. As defendant Hornbeck points out in his affidavit, the extension of transportation services to nonpublic school students would reduce the already limited funds available for purposes of public education. That some transportation services are being provided to nonpublic school students in certain counties is due to the fact that appropriate local laws had been enacted by these coun-

ties before the decision of the Maryland Court of Appeals in *McCarthy, supra.* The Equal Protection Clause does not require that the General Assembly enact legislation mandating that all counties must pay for private school transportation, or conversely, that local laws to such effect all be repealed.

Plaintiffs contend that the bases relied upon by defendants here were rejected by this Court in *Parker v. Mandel,* 344 F.Supp. 1068, 1080 (D.Md.1972). Plaintiffs misread that opinion. Holding that the reasonable basis test should be applied in determining whether Maryland's system for financing public education violated the Equal Protection Clause, this Court there concluded that the question presented could not be decided on a motion to dismiss the amended complaint. Similarly, in this Court's Memorandum and Order dated June 2, 1983 in this case, the Court ruled that the motion to dismiss should be denied inasmuch as the pertinent facts had not as yet been developed by discovery or otherwise. The record in *Parker v. Mandel* in fact supports the conclusion reached by this Court in this case. Following extensive discovery, the plaintiffs in the *Parker* case, realizing the very difficult burden they faced in undertaking to show that the State's system for financing public school education did not satisfy the reasonable basis test, voluntarily dismissed their suit even before defendants had filed a motion for summary judgment.

Plaintiffs also argue that the student transportation program is not rationally related to the goal of conserving financial resources because some of the public school buses operate at less than full capacity. There is no merit to this contention. As noted, a state law does not violate the Equal Protection Clause merely because it creates classifications which are imperfect. Rather, plaintiffs can prevail on their equal protection claim only if they show that the legislative facts on which the Maryland student transportation system is based could not reasonably be conceived to be true by the General Assembly. No such showing can be made here by the plaintiffs

inasmuch as it is beyond dispute that the extension of transportation services to non-public school students would significantly increase the overall cost of the student transportation program. Therefore, defendants are also entitled to summary judgment as to plaintiffs' equal protection claim.

For all these reasons, defendants' motions for summary judgment will be granted. An appropriate Order will be entered by the Court.