Matthew B. GOODALL, an infant, by his father and next friend Robert B. GOODALL; Robert B. Goodall; Kathleen N. Goodall, Plaintiffs–Appellants,

v.

STAFFORD COUNTY SCHOOL BOARD, Defendant–Appellee.

Virginia School Boards Association, Amicus Curiae.

No. 94–1586.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 31, 1995.

Decided July 27, 1995.

**ARGUED:** Robert Brandt Goodall, Easterling & Goodall, Stafford, VA, for appellants. Kathleen Shepherd Mehfoud, Hazel & Thomas, P.C., Richmond, VA, for appellee. **ON BRIEF:** Vernon E. Inge, Jr., Hazel & Thomas, P.C., Richmond, VA, for appellee. Scott S. Cairns, Kimberly S. Hugo, McGuire, Woods, Battle & Boothe, Richmond, VA, for amicus curiae.

Before ERVIN, Chief Judge, and MURNAGHAN and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Chief Judge ERVIN and Judge MOTZ joined.

## OPINION

MURNAGHAN, Circuit Judge:

Matthew B. Goodall, an infant, and his parents, Robert B. Goodall and Kathleen N. Goodall, brought an action against the Stafford County School Board in Virginia ("the County") to compel the County to provide Matthew with a cued speech transliterator[1] in his private sectarian school. They alleged that having to pay for their own transliterator constituted a substantial burden on their free exercise of religion, which amounted to a violation of both the Free Exercise Clause of the First Amendment and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4. They further claimed that the burden imposed on them was not justified by a compelling interest on the part of the County. Because we find that no substantial burden was imposed on the Goodalls' free exercise of religion, we affirm the district court's grant of judgment as a matter of law in favor of the County.

### I.

Matthew Goodall was rendered profoundly hearing impaired by an attack of meningitis at the age of three-and-a-half. Up until 1984, Stafford County provided Matthew with special education services in its public schools at no cost. However, in 1984, Matthew's parents placed him in a private religious school. At the time the Goodalls filed suit in the instant case, Matthew was enrolled in Fredericksburg Christian School, located outside of Stafford County in the city of Fredericksburg, Virginia.

Stafford County offers a free public education to Matthew at its public schools, as well as the services of an interpreter, speech and language services, and learning disability services at no charge to his parents. When the County refused to provide a cued speech transliterator to Matthew at his private religious school, the Goodalls supplied the necessary services to him in other ways. Specifically, Matthew's mother provided Matthew

---

1. Cued speech is a phonetic system in which hand shapes in different positions near the mouth, together with the shape of the lips, visually distinguish the sounds made by the speaker, enabling a deaf child to "hear" what the speaker is saying.

with cued speech services for his sixth, seventh, and eighth grade years, after which the Goodalls, at their own expense, hired someone else to provide the services. The cost of such an interpreter has varied from year to year; it amounted to approximately $14,000 during the 1993–94 school year.[2] The Goodalls seek reimbursement of the expenses already incurred, as well as the County's acknowledgment of its obligation to provide any transliteration services that would be required by Matthew during his remaining time at Fredericksburg Christian School.

The Goodalls appeared before us once previously pressing their claims, but were unsuccessful. In 1988, the Goodalls brought an action against Stafford County, challenging the County's refusal to provide a cued speech transliterator for Matthew at Fredericksburg Christian School. Summary judgment was granted against the Goodalls at the district court level, and we affirmed on appeal. *See Goodall v. Stafford County Sch. Bd.*, 930 F.2d 363 (4th Cir.) (*Goodall I*), cert. denied, 502 U.S. 864, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991). In *Goodall I*, we held that the County's provision of a cued speech transliterator at a private religious school would violate the Establishment Clause of the First Amendment to the United States Constitution, and that the County therefore had a compelling interest for refusing to provide or to pay for the service. *Id.* at 371. In 1993, however, the Supreme Court decided in *Zobrest v. Catalina Foothills Sch. Dist.*, — U.S. —, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993), that the Establishment Clause did not bar a school district from furnishing a child with a sign language interpreter in a sectarian school under a program that provided benefits to disabled children in a religion-neutral manner. *Id.* at —, 113 S.Ct. at 2469.

After the *Zobrest* Court overruled our Establishment Clause holding in *Goodall I*, the

Goodalls filed the instant suit. They now assert that the County's refusal to provide Matthew with a cued speech transliterator in his private school imposes a substantial burden on their free exercise of religion,[3] and that the County has no compelling interest for imposing such a burden. The district court below decided that no substantial burden had been imposed on the Goodalls by the County's refusal to provide Matthew with a cued speech transliterator. Finding no cognizable burden, the district court considered it unnecessary to examine the County's evidence regarding its interest, and granted judgment as a matter of law to the County at the close of the Goodalls' case, under Federal Rule of Civil Procedure 52(c). The Goodalls have appealed.

## II.

■ The Goodalls raise both a constitutional claim under the Free Exercise Clause of the First Amendment and a statutory claim under RFRA.[4] The Free Exercise Clause of the First Amendment, which is made applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. Const. amend. I. While the Free Exercise Clause commands that the government may not pass laws that stifle religious belief or practice, *see Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, — U.S. —, —, 113 S.Ct. 2217, 2222, 124 L.Ed.2d 472 (1993), a law that is religion-neutral and generally applicable does not violate the Free Exercise Clause even if it incidentally affects religious practice. *Employment Div., Dep't of Human Resources of Or. v. Smith*, 494 U.S. 872, 878–79, 110 S.Ct. 1595, 1599–1600, 108 L.Ed.2d 876 (1990) *see also Church of the Lukumi Babalu Aye*, — U.S. at —, 113

---

2. There is no dispute between the parties as to the amount of money that the Goodalls have paid for transliterator services at Matthew's private school. In addition, both parties agree that Matthew needs a cued speech transliterator to benefit from his education.

3. In *Goodall I*, we did not decide whether a substantial burden had been imposed on the Goodalls. *See* 930 F.2d at 369–70.

4. The County asserts that the Goodalls should not be able to assert their claim under RFRA. We find, however, that the Goodalls properly pleaded a violation of RFRA in their amended complaint, and we will therefore consider their claim under the statute.

S.Ct. at 2226 ("[O]ur cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."); *American Life League, Inc. v. Reno*, 47 F.3d 642, 654 (4th Cir.1995) ("[A] neutral, generally applicable law does not offend the Free Exercise Clause, even if the law has an incidental effect on religious practice."), *petition for cert. filed* (May 12, 1995). In *Smith*, the Supreme Court held that a free exercise challenge to a generally applicable law that incidentally affects the practice of religion should not be analyzed under the strict approach applicable to unemployment compensation cases, exemplified in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).[5] *See Smith*, 494 U.S. at 883–85, 110 S.Ct. at 1602–04.

■ Congress enacted RFRA in 1993 in response to the Supreme Court's holding in *Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876. In RFRA, Congress explicitly reinstated the application of the compelling interest test set out in *Sherbert*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965, and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), to "all cases where free exercise of religion is substantially burdened...." 42 U.S.C. § 2000bb(b)(1). In particular, RFRA provides that government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section." *Id.* at § 2000bb–1(a). Subsection (b) deems permissible a substantial burden on religion where the government's policy is justified by a compelling governmental interest and is the "least restrictive means" of furthering that governmental interest. RFRA thereby creates a statutory cause of action for a plaintiff whose free exercise of religion is substantially burdened by the application of a law or policy that is religion-neutral on its face. *See id.* § 2000bb(b)(2).

■ In analyzing a claim under RFRA, we look first at whether a substantial burden has been imposed on the exercise of sincerely-held religious beliefs,[6] and then determine whether the state can justify the imposition of that burden. *See* 42 U.S.C. § 2000bb–1(a), (b). Thus, if the Goodalls cannot show that their exercise of religion is *substantially burdened* by the County's policy, the County is not required to come forth with proof of its interest. *See Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir.1995) (finding that under RFRA, only governmental regulation that places a substantial burden on a plaintiff's religious activity must be justified by a compelling state interest), *cert. denied* —— U.S. ——, 115 S.Ct. 2625, 132 L.Ed.2d 866 (1995). Since RFRA does not purport to create a new substantial burden test, we may look to pre-RFRA cases in order to assess the burden on the plaintiffs for their RFRA claim.

■ It is well established that there is no substantial burden placed on an individual's free exercise of religion where a law or policy merely "operates so as to make the practice of [the individual's] religious beliefs more expensive." *Braunfeld v. Brown*, 366 U.S. 599, 605, 81 S.Ct. 1144, 1147, 6 L.Ed.2d 563 (1961) (plurality opinion). In *Braunfeld*, members of the Orthodox Jewish faith challenged a law in Pennsylvania which prohibited the *retail sale of certain items* on Sundays. The plaintiffs were merchants who, before the law was enacted, had kept their businesses open on Sundays and were thereby able to compensate for losses that they incurred because their religion forbade them from opening their stores on Saturdays. They challenged the Sunday closing law, alleging that observance of the law would cause them severe economic hardship that might force them to give up their Saturday observances. The Supreme Court found that enforcement of the law did not burden the plaintiffs' free exercise of religion even though it might cause them to lose money

---

5. *Sherbert* required the government to prove a compelling state interest in order to justify any substantial impingement on free exercise rights. *See* 374 U.S. at 403, 83 S.Ct. at 1793–94.

6. The parties agree that the Goodalls send Matthew to a Christian school pursuant to their sincerely-held religious beliefs.

that they would earn if they were permitted to open their stores on Sundays. *See id.* at 606–07, 81 S.Ct. at 1147–48.

The Supreme Court has also repeatedly held that the fact that a person has a constitutional right (or, in the instant case, an analogous statutory right) does not necessarily impose upon the government an obligation to subsidize that right. *See Regan v. Taxation with Representation of Wash.,* 461 U.S. 540, 546, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983) ("We again reject the 'notion that First Amendment rights are somehow not fully realized unless they are subsidized by the State.'" (quoting *Cammarano v. United States,* 358 U.S. 498, 515, 79 S.Ct. 524, 535, 3 L.Ed.2d 462 (1959), Douglas, J., concurring)); *Rust v. Sullivan,* 500 U.S. 173, 193, 111 S.Ct. 1759, 1772, 114 L.Ed.2d 233 (1991) (finding that a right is not infringed simply because the government chooses not to fund it); *Harris v. McRae,* 448 U.S. 297, 317–18, 100 S.Ct. 2671, 2688–89, 65 L.Ed.2d 784 (1980) (stating, in the context of a due process claim, that although a person may be conferred a freedom by the Constitution, there is no "entitlement to such funds as may be necessary to realize all the advantages of that freedom"); *see also Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio,* 699 F.2d 303, 306 (6th Cir.) ("Inconvenient economic burdens on religious freedom do not rise to a constitutionally impermissible infringement of free exercise."), *cert. denied,* 464 U.S. 815, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *McCarthy v. Hornbeck,* 590 F.Supp. 936, 945 (D.Md.1984) ("In essence, plaintiffs are here seeking a state subsidization of a part of the cost of sending their children to private, church-related schools. The Supreme Court has consistently held that a statute does not impinge on a constitutional right merely because it does not subsidize that right.").

■ Stafford County does not contest the Goodalls' decision to place Matthew in a religious school, nor does the County attempt to argue that Matthew should not receive the necessary cued speech services. The only burden claimed by the Goodalls is a financial one, and the sole question at issue is whether the County is constitutionally or statutorily required to provide the cued speech services at Matthew's Christian school, relieving the Goodalls of their financial burden.[7] Under the instant circumstances, we find that the economic burden borne by the Goodalls does not substantially impinge on their free exercise rights under RFRA.

■ The unemployment compensation cases cited by the Goodalls as the proper standard to use in assessing the burden on their free exercise rights do not dictate a contrary result. *See Frazee v. Illinois Dep't of Employment Sec.,* 489 U.S. 829, 109 S.Ct. 1514, 103 L.Ed.2d 914 (1989); *Hobbie v. Unemployment Appeals Comm'n of Fla.,* 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987); *Thomas v. Review Bd. of the Ind. Employment Sec. Div.,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Sherbert,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965. In *Hobbie,* the Supreme Court articulated the standard for assessing a plaintiff's burden in an unemployment benefits case:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

*Hobbie,* 480 U.S. at 141, 107 S.Ct. at 1049 (quoting *Thomas,* 450 U.S. at 717–18, 101 S.Ct. at 1431–32) (emphasis omitted). The Goodalls contend that if they can show that the provision of a cued speech transliterator for Matthew is an "important benefit," *see Hobbie,* 480 U.S. at 141, 107 S.Ct. at 1049, the County must be required to show that it has a compelling interest in not providing the service. However, the Goodalls have neither been compelled to engage in conduct proscribed by their religious beliefs, nor have

---

7. At trial, Matthew's mother also testified that an emotional strain was put on the family when she provided the interpreting services for Matthew. However, that issue has been resolved, since Matthew has had a paid transliterator since the ninth grade.

they been forced to abstain from any action which their religion mandates that they take. Rather, they must pay for a cued speech transliterator if they decide to keep Matthew in a sectarian school and to forego the advantages offered by the public school system in Stafford County.

We find that the financial burden which the Goodalls must bear in order to provide Matthew with a cued speech interpreter at his private sectarian school does not constitute a substantial burden under RFRA. We thus hold that the Goodalls' claim under RFRA is without merit.

■ Similarly, the Goodalls cannot prevail on their claim under the Free Exercise Clause. In the proceedings below, the County was not required to present evidence to the district court concerning the details of its special education policy, but the Goodalls concede that Matthew would receive the services of a cued speech transliterator free of charge if he attended the County's public schools. Whether the County's policy is generally applicable and is analyzed under the standard articulated by the Supreme Court in *Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876, or is not generally applicable and is properly examined by assessing whether a substantial burden has been placed upon the Goodalls, *see supra*, we conclude that the Goodalls' claim under the Free Exercise Clause fails.

### III.

■ The Goodalls also attempt to make a claim under the Establishment Clause of the First Amendment. However, while the Establishment Clause determines whether the County may provide certain services in sectarian schools, it does not mandate that the County provide such services. *See McCarthy*, 590 F.Supp. at 943. The Goodalls' Establishment Clause argument thus also fails.[8]

Finally, we note that in *Goodall I*, we held that the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1401–1491*o*,[9] did not dictate that Stafford County must provide or pay for the services requested by the Goodalls in Matthew's Christian school. 930 F.2d at 369. That portion of our opinion was not overruled by *Zobrest*, —— U.S. ——, 113 S.Ct. 2462, 125 L.Ed.2d 1, and cannot be challenged in the instant appeal.

### IV.

We thus conclude that the Goodalls have failed to sustain their burden under RFRA or the Free Exercise Clause of establishing that Stafford County's refusal to provide Matthew with a cued speech transliterator in his private sectarian school constitutes a substantial burden on the Goodalls' exercise of religion. The district court's decision to grant judgment as a matter of law to the County was therefore proper.

The judgment is accordingly

*AFFIRMED.*

---

8. We decline to address the arguments made by the Goodalls under the Privileges and Immunities Clause and the Equal Protection Clause, because those arguments were not raised before the district court and no exceptional circumstances have been cited by the Goodalls to explain the omission. *Babb v. Olney Paint Co.*, 764 F.2d 240, 244 (4th Cir.1985).

9. At the time *Goodall I* was decided, the statute was referred to as the Education of the Handicapped Act (EHA). *See Goodall I*, 930 F.2d at 365.