**Elizabeth A. FRAME, et al.,**
**Plaintiffs-Appellants,**

v.

**SOUTH BEND COMMUNITY SCHOOL CORPORATION, et al.,**
**Defendants-Appellees.**

**No. 3–1184A314.**

Court of Appeals of Indiana,
Third District.

July 17, 1985.

Rehearing Denied Aug. 30, 1985.

Timothy W. Woods, South Bend, for plaintiffs-appellants.

Franklin A. Morse, II, Gregory L. Kelly, Douglas D. Small, Barnes & Thornburg, South Bend, for defendants-appellees.

HOFFMAN, Judge.

This appeal involves an interpretation of one statute within the Indiana Pupil Transportation Act and a determination of the constitutionality of that statute. The statute in question is IND.CODE § 20–9.1–7–1 which provides:

"When school children who are attending a parochial school in any school corporation reside on or along the highway constituting the regular route of a public school bus, the governing body of the school corporation shall provide transportation for them on the school bus. This

transportation shall be from their homes, or from some point on the regular route nearest or most easily accessible to their homes, to and from the parochial school or to and from the point on the regular route which is nearest or most easily accessible to the parochial school."

Under this statute, the appellees South Bend Community School Corporation by its Board of School Trustees determined that they would provide transportation for private or parochial school children on a "seat available" basis. No additional buses would be put into service and only the existing routes and schedules would be used.

Appellants are private or parochial school students and the parents of those students. They brought this action, which was originally removed to the United States District Court for the Northern District of Indiana, seeking injunctive, declaratory and monetary relief. They alleged that the statute and its application violated the children's right to equal protection guaranteed by the Fourteenth Amendment to the Constitution of the United States and by Article 1, § 23 of the Constitution of the State of Indiana. The parents alleged that the statute denied them their right to send their children to private schools of their choice as guaranteed by the Fourteenth Amendment to the Constitution of the United States and compulsory school attendance laws of the State of Indiana. Appellants further contended that the statute impermissibly burdens their right to freely exercise the religion of their choice as guaranteed by the First Amendment to the Constitution of the United States and Article 1, § 2 of the Constitution of the State of Indiana.

The Federal District Court issued its order on January 18, 1982, in which the court held:

1) A school corporation under IND. CODE § 20–9.1–7–1 needs only supply transportation when eligible parochial school children can be accommodated on public school buses already in oper-

ation for the benefit of public children; and

2) A school corporation is under no statutory or constitutional duty to provide transportation for parochial school children beyond accommodations in established public school buses of those parochial school children who reside along those routes, should seats be available.

On appeal, the Seventh Circuit affirmed the order of the District Court but remanded the case for a determination of the state law claim. Upon remand, the St. Joseph Superior Court found that the District Court's construction of the statute and determination of constitutionality were correct and adopted the order as its own.

The following questions are presented to this Court:

1) Did the trial court err in its determination that IND.CODE § 20–9.1–7–1 only requires the school corporation to provide transportation for private or parochial school children on a "seat available" basis?

2) Whether the interpretation and application of IND.CODE, § 20–9.1–7–1 violate the Constitution of the State of Indiana or the laws of the State of Indiana.

Appellants contend that the trial court's "seats available" interpretation is contrary to Indiana public policy. It is appellants' belief that the statute requires the school corporation to provide all additional transportation that is needed.

■■■ In construing a statute our foremost concern is to determine and give effect to the true intent of the legislature. A court should strive to achieve the intent of the legislature. *Petition of Meyer* (1984), Ind.App., 471 N.E.2d 718. Sometimes the legislature's intent is evident from the clear and unambiguous language of the statute. However, where the meaning of the language is ambiguous or where more than one construction of the statute is possible, we will construe the statute to determine the apparent legislative intent. *John-*

*son v. LaPorte Bank & Trust Co.* (1984), Ind.App., 470 N.E.2d 350.

In 1933, Indiana had a statute similar to today's IND. CODE § 20–9.1–7–1. In pertinent part that statute, IND.CODE ANN. § 28–2805. (Burns 1933 Repl.), provided:

"... Where school children who are attending any parochial school in any school corporation of this state reside on or along the highway constituting the regular route of a public school bus or conveyance, the school trustee shall afford transportation, without extra charge, by means of such school bus or conveyance, for the children attending any such parochial school, from their homes, or from some point on the regular route nearest or most easily accessible to their homes, to such parochial school, or to the point on such regular route which is nearest or most easily accessible to such parochial school."

The Attorney General of the State of Indiana offered his official opinion on the first question before this Court, based upon that statute.

The Attorney General's opinion discussed the right of parochial pupils to free transportation when affording such transportation would require the use of an additional bus and the service of an additional bus driver. He stated:

"It will be noted that the right of parochial pupils to free transportation, furnished by the proper school trustee or trustees, depends upon their residing 'on or along the highway constituting the regular route of a public school bus or conveyance.' In such event, it becomes the duty of the proper school trustee or trustees to furnish such parochial pupils free transportation 'by means of such school bus or conveyance.' (My italics.) The phrase last quoted obviously refers to the school bus or conveyance already being operated over such regular, established route, and neither requires nor authorizes the school trustee or trustees to place any additional bus on the route in order to accommodate parochial pupils otherwise eligible for transportation.

Apparently the legislature only intended to extend the privilege of free transportation to parochial pupils where they could be accommodated in the bus or conveyance already in use on such regular route, as otherwise there would have been no purpose in inserting the limiting phrase, 'by means of such school bus or conveyance.' Conversely, if the legislature had intended to impose an unqualified duty on the respective school trustees to afford transportation for parochial school children, regardless of whether or not additional busses would be required for such purpose, then this result would have been accomplished simply by omitting the phrase in question.

... [I]t is my opinion that the proper school trustees are only obligated to furnish transportation for such number of them as can be accommodated in the school bus already in operation over the regularly established school route in question." 1936 Op. Att'y Gen. 415.

Over the past fifty years the statute relating to public transportation of private or parochial school students has not changed in substance. While the legislature could have amended the statute if the Attorney General's opinion had incorrectly interpreted it, the legislature chose not to. In 1980, the Attorney General was called upon to construe the present statute. While citing the 1936 opinion for authority, he stated:

"So long as a regular bus route is maintained by a school corporation, the governing body of the corporation shall provide transportation for the eligible parochial school children on the buses they operate. It is not required that the school corporation revise the bus route to accommodate the parochial school children." 1980 Op.Att'y Gen. 80–31.

■ Based upon the interpretations of the Attorney General, the legislative acquiescence over the past fifty years, and the reliance placed upon the interpretation by school boards and transportation departments, this Court cannot find error in the

trial court's interpretation of IND.CODE § 20–9.1–7–1.

The second issue involves the constitutionality of the statute and its application. This issue contains three subissues as stated previously herein. The minor appellants contend that the statute denies them equal protection under the law. The parent appellants also maintain that it denies them equal protection and in addition, violates their constitutional right to freely exercise the religion of their choice.

The first two subissues to be dealt with are the alleged equal protection violations. The minor appellants claim that they are being denied equal protection under the law as guaranteed by IND. CONST. Art. 1, § 23; IND.CODE § 20–8.1–2–1; and IND. CODE § 20–9–1–2. They argue that a school board may not extend the privilege of transportation to children who attend public schools, and at the same time refuse to provide the same transportation to children who attend private or parochial schools. The parent appellants claim that the statute denies them their right to send their children to private schools of their choice as guaranteed by the Fourteenth Amendment to the Constitution of the United States and compulsory school attendance laws of the State of Indiana. As the rights intended to be protected by the Fourteenth Amendment are identical to those intended to be protected by Article 1, § 23 of the Constitution of the State of Indiana, *Reilly et al. v. Robinson et al.* (1977), 266 Ind. 29, 360 N.E.2d 171, this Court may turn to the federal court decisions for guidance.

The parties are correct that the rational basis test is the proper level of review for the equal protection claims presented herein.

*McCarthy v. Hornbeck* (D.Md.1984), 590 F.Supp. 936;

*Luetkemeyer v. Kaufmann* (W.D.Mo. 1973), 364 F.Supp. 376. Under that standard this Court must determine whether there are reasonable or rational bases for the State's decision. The burden rests upon appellants to show that the decision is unreasonable.

*McCarthy, supra;*

*Luetkemeyer, supra.*

■ Judged by this standard, this Court cannot determine that the appellees have acted unreasonably or irrationally. The minutes of the South Bend School Corporation's Board of Trustees' meetings of August 3, 1981, August 17, 1981, and September 8, 1981, identify several legitimate legislative purposes behind the Board's "seats available" plan:

1) the additional cost to provide bus transportation for parochial school children;

2) the administrative and organizational difficulties of coordinating busing for parochial schools and the public schools;

3) the difficulties in complying with a plan of desegregation if busing were provided to parochial school children; and

4) the decline in the population of the public schools if attending parochial schools were made more attractive by providing free busing to those schools.

In *McCarthy, supra,* several grounds were relied upon by the defendants therein as constituting reasonable bases for the decision to provide transportation services only to public school students. While the court did not discuss each basis separately, it did find that the State's decision was rationally related to the valid goal of conserving limited financial resources. Similarly in this case, one of the appellees' stated considerations was the additional cost. As it is beyond dispute that the extension of transportation services to nonpublic school students would significantly increase the overall cost of the student transportation program, it is clear to this Court that the appellees' decision was reasonable and rational. Therefore, appellants' equal protection claims fail.

This Court must last address the other subissue raised by appellants' constitutional challenge. The parent appellants con-

tend that the statute impermissibly burdens their right to freely exercise the religion of their choice as guaranteed by the First Amendment to the Constitution of the United States and IND.CONST. Art. 1, § 2.

■ To demonstrate an infringement on one's free exercise rights, an individual must show "the coercive effect of the state enactment as it operates against him in the practice of his religion." *Brandon v. Board of Ed. of Guilderland Cent. Sch.* (2nd Cir.1980), 635 F.2d 971, *cert. denied* (1981), 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109. Once a plaintiff establishes that the free exercise of his religion is infringed, the State must demonstrate a compelling state interest and that less drastic means to achieve that purpose are not available. *See, Bob Jones University v. United States* (1983), 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157; *United States v. Lee* (1982), 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127; *Brandon, supra.*

■ Under the free exercise clause, appellants have the constitutional right to send their children to parochial schools. *Wisconsin v. Yoder* (1972), 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15. However, appellants maintain that right is infringed because they will now be forced to supply their own means of transportation to the parochial schools.

In *Braunfeld v. Brown* (1961), 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563, the Supreme Court upheld a Pennsylvania statute which prohibited the Sunday retail sale of certain commodities. The appellants therein, certain Orthodox Jewish merchants, alleged that the statute violated their First Amendment free exercise guarantees as their religion precluded them from working on Saturday. As a result, these merchants were suffering a monetary loss by being unable to operate on Sunday.

The Supreme Court held that, "[t]o strike down, without the most critical scrutiny, legislation which imposes only an indirect burden on the exercise of religion, *i.e.*, legislation which does not make unlawful the religious practice itself, would radically restrict the operating latitude of the legislature." *Id.* at 606, 81 S.Ct. at 1147. However, "If the purpose or effect of a law is to impede the observance of one or all religions or is to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect." *Id.* at 607, 81 S.Ct. at 1148. The Court upheld the statute after determining that its operation merely made the practice of the merchants' religious beliefs more expensive.

In *Norwood v. Harrison* (1973), 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723, the Court reviewed a Mississippi statute under which textbooks were purchased by the State and lent to students in both public and private schools without reference to whether any participating private school had racially discriminatory policies. While the Court instructed the State to determine on a case-by-case basis whether a private school has such a policy, and if so, to deny that school free textbooks, the Court did state as follows: "Even as to church-sponsored schools whose policies are nondiscriminatory, any absolute right to equal aid was negated, at least by implication, in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)." 413 U.S. at 462, 93 S.Ct. at 2809.

■ Providing transportation to parochial school students, where transportation is provided to public school students is certainly a type of "equal aid" to which the *Norwood* Court referred, and under that decision and that Court's analysis of *Lemon*, equal aid is not constitutionally required. Undoubtedly, in the absence of such "equal aid," appellants herein will find the free exercise of their religion to be somewhat more expensive, yet under *Braunfeld*, this does not render the statute unconstitutional. Finally, the statute's application does not make unlawful the practice of appellants' religious belief.

For the above reasons, it is clear that appellants have not sustained their initial burden, that of showing the free exercise of their religion is infringed. Therefore, their constitutional challenge on the

grounds of First Amendment free exercise violation also fails.

Affirmed.

GARRARD, J., concurs.

STATON, P.J., concurs in result.