ROMAN CATHOLIC ARCHDIOCESE
OF INDIANAPOLIS, INC.,
Appellant/Plaintiff,

v.

METRO. SCHOOL DIST. OF LAW-
RENCE TWP. and Concetta Raimon-
di, as Superintendent of the Metro.
School Dist. of Lawrence Twp., Appel-
lees/Defendants,

Joseph Piper, Renee Piper, Rachel M.
Lewis, Bryan Smith, Jennifer Smith,
Lisa Schultheis, Lora Lehman, Jim
Fernandez, Gerri Fernandez, Chris
Roberts and Julia Roberts, Appel-
lants/Plaintiffs,

v.

Metro. School Dist. of Lawrence Twp.
and Concetta Raimondi, as Superin-
tendent of the Metro. School Dist. of
Lawrence Twp., Appellees/Defendants.

No. 49A02–1004–PL–427.

Court of Appeals of Indiana.

March 28, 2011.

John S. (Jay) Mercer, Daniel S. Tomson, Mercer Belanger, Indianapolis, IN, Attorneys for Appellants.

Jack G. Hittle, Church Church Hittle & Antrim, Noblesville, IN, Attorney for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

In this consolidated appeal, the Roman Catholic Archdiocese of Indianapolis ("Archdiocese"); and Joseph Piper, Renee Piper, Rachel M. Lewis, Bryan Smith, Jennifer Smith, Lisa Schultheis, Lora Lehman, Jim Fernandez, Gerri Fernandez, Chris Roberts, and Julia Roberts ("Parents") appeal from the lower courts' denial of their respective requests for declaratory and injunctive relief and the courts' judgments in favor of Metropolitan School District of Lawrence Township (the "School District") and Concetta Raimondi ("Raimondi"), as Superintendent of the School District.

We affirm.

### ISSUE

Whether—in addition to transporting nonpublic school students who reside along or near its regular school bus routes to the point on the regular route nearest or most easily accessible to their schools—the School District is required to provide and pay the cost of transporting the nonpublic school students to their respective schools using shuttle buses that are not already in operation on regular established bus routes, and which do not already serve public school students.

### FACTS

Indiana Code section 20–27–5–2 provides that "[t]he governing body of a school corporation may provide transportation for students to and from school." Among the enumerated "[g]eneral powers" of an Indiana school corporation is the power "to transport children to and from school, when in the opinion of the governing body the transportation is necessary, including considerations for the safety of the children and without regard to the distance the children live from the school." Ind.Code § 20–26–5–4(10); *and see* I.C. § 20–27–9–15 ("The governing body of a

school corporation shall have sole control of and shall account for all funds received for the transportation of students and the transportation of other groups authorized by . . . this chapter.").

In the instant case, the School District is responsible for operating a school bus transportation system that transports students [1] to the elementary, middle and high school schools in the Township. Archdiocese operates two nonpublic elementary schools in the Township: St. Lawrence School located at 6950 E. 46th Street in Lawrence; and St. Simon the Apostle School located at 8155 Oaklandon Road in Indianapolis. On each school day, several School District school buses drive past St. Lawrence and St. Simon schools.

According to the stipulated [2] facts, "Prior to January 4, 2010, Lawrence Township provided transportation to non-public school students who attended St. Lawrence School and St. Simon School pursuant to I.C. § 20–27–11–1." (App.66–67). Specifically, for more than a decade, nonpublic school students who reside along or near regular established School District bus routes have been picked up from their neighborhoods and transported to one of the three School District middle schools. From the middle school(s), the nonpublic school students ride, for free, shuttle buses to St. Simon or St. Lawrence school. There has never been a transportation contract between School District and St. Lawrence or St. Simon schools. School District has consistently borne the financial costs of providing the shuttle bus service.

On November 23, 2009, the Board of the School District held a public meeting regarding the possibility of assessing a fee for the shuttle bus service. Administrators from St. Lawrence and St. Simon were in attendance, having received prior notice that the matter would be on the agenda. Board members cited a transportation budget deficit as the reason for the proposed fee. The Board's justification was stated as follows: "Over the years, we have allowed [nonpublic school] students to ride our buses without paying a transportation fee that would assist in the day to day monetary operation of those buses and their drivers. That daily operation includes, but is not limited to, fuel, insurance, routine wear and tear, etc." [3] (App.68). The Board discussed and considered the following four options:

(1) [ ] discontinu[ing] all bus transportation to non-public school students beginning January 4, 2010; (2) to discontinue all bus transportation to non-public school students beginning the school year starting in August of 2010; (3) charging a fee to St. Simon and St. Lawrence for providing transportation to the non-public school students who attended St. Simon and St. Lawrence; and (4) maintain[ing] the status quo and continu[ing] to provide transportation services to students as had been the current practice of Lawrence Township.

(App.67–68). Subsequently, in a unanimous vote, the Board voted to adopt option (3) to assess a fee.

On or about December 3, 2009, St. Lawrence and St. Simon school officials received letters from the School District reflecting the assessment of "a $1.00 per

---

1. Indiana Code section 20–27–2–11 defines a "student" as "a child enrolled in a public or nonpublic school at any grade between kindergarten and grade 12."

2. On January 28, 2010, the parties submitted an agreed stipulation of facts to the trial court.

3. This daily operation cost figure did not include the school bus drivers' wages.

mile fee per child for the second semester." (Ex. 34, 35). Specifically, the School District assessed a $2,380.00 fee for the eighty-one students that rode the shuttle bus to St. Lawrence; and a $2,542.00 fee for the thirty-eight students that rode the shuttle bus to St. Simon. Counsel for the School District stated that the letters were proposed invitations for the parties to engage in contract talks for continuation of the shuttle service. The School District concedes that it lacks the statutory authority to unilaterally assess such a fee.

Archdiocese refused to enter into a service contract, and on January 11, 2010, filed a Verified Motion for Emergency Restraining Order and memorandum of law in the Marion Superior Court 5, Judge Robin Moberly presiding. The School District filed its answer and memorandum of law on January 27, 2010. On January 28, 2010, Judge Moberly conducted a hearing on Archdiocese's petition for injunctive and declaratory relief.[4] At the outset, the parties filed an Agreed Stipulation of Facts. (App.66–70). Counsel for Lawrence Township requested findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52. The court received evidence and took the matter under advisement.

On February 11, 2010, Judge Moberly granted Archdiocese's motion for an emergency temporary restraining order. Thus, until further order of the court, Lawrence Township (1) was restrained and enjoined from assessing any fee to St. Simon or St. Lawrence; and (2) was ordered to continue providing shuttle bus services to the St. Simon and St. Lawrence students as it had done in the past.

On March 4, 2010, Judge Moberly rendered her decision and denied Archdiocese's petition for injunctive and declaratory relief; her order provided, in part, as follows:

22. Lawrence Township School currently picks up the non-public school students from their homes at the time middle school students are picked up (earlier than the public elementary school students) and takes the children to the middle schools. The school district then has bus drivers pick up the non-public students at each of the middle schools and transport them to each of the non-public schools. This is the segment of the transportation which causes the school system to incur additional cost, which cost the school system has attempted to pass along to the non-public schools.

23. The school district cannot pick up the non-public elementary students when the public elementary school students are picked up because they would get to their respective schools later than the school start time.

24. The point on the regular bus route that is nearest or *most easily accessible* to the nonpublic school is the respective middle schools. See IC § 20–27–11–1 (emphasis added). Some of the Lawrence [T]ownship school buses pass by the plaintiff parochial schools at times during their bus routes, but not at times that are safe for the students and conve-

---

4. At the time of the hearing, the School District was no longer providing shuttle bus services to St. Simon school, at St. Simon's request. *See* Tr. 25–26 (Kathleen Wright, principal of St. Simon School, testified, "we sent [the School District a] letter and said that we were not going to be paying the fee and therefore our students would no longer be riding the bus.").

Betty Pope, principal of St. Lawrence School, testified that during the pendency of the action, the School District "continue[d] to provide the students transportation until [St. Lawrence and the School District] ... reached an agreement." (Tr. 29–30).

nient for the parochial schools. The children whose buses do go past the parochial schools during their usual bus routes cannot be dropped off at the parochial school on the regular route because the added bus traffic would cause safety issues and because the children would be dropped off before the school personnel were available to supervise.

25. Not every bus carrying a non-public student goes by the student's non-public school.

26. The cost which [Lawrence Township] has proposed to pass along to the respective non-public schools is the cost of the additional transportation of the children from the middle schools to each of the nonpublic schools, only.

27. [Lawrence Township]'s transportation budget is in a deficit situation and the cost of transporting the non-public students to each of their respective schools must be covered by other education money.

28. [Lawrence Township] is not proposing to levy a tax, fine or penalty upon the families of the students nor upon the non-public schools. The non-public students and their schools can provide the transportation from the middle schools (the point on the bus route that is most easily accessible) to the non-public schools in any manner they choose to do so.

They are not required to pay [Lawrence Township] unless they request the public school corporation to transport the students from the middle schools to the non-public schools, which are not part of the regular bus route. However, if the non-public schools request that transportation from the middle schools to their respective schools be provided by the [Lawrence Township], then the non-public schools must pay the actual cost thereof.

The Court finds that the Metropolitan School District of Lawrence Township and Concetta Raimondi, as Superintendant [sic], have not exceeded their legal authority, have not violated I.C. § 20–27–11–1, and have not levied a fine or penalty. The school corporation is not required by I.C. § 20–27–11–1 to provide the additional leg of transportation from the middle school for each non-public school. Therefore, the Court denies [Archdiocese]'s claim for injunctive relief.

(App.191–93).

On March 22, 2010, the Board voted to terminate the shuttle bus service, effective April 5, 2010. The School District voted that it would continue to transport nonpublic school students who lived on or near its regular bus routes to the middle schools. St. Simon, St. Lawrence, and the parents of the nonpublic school students would then, however, be responsible for arranging for transportation (*i.e.,* car pools) to deliver the nonpublic students from the middle schools to the nonpublic schools; and (at the close of the school day), from the nonpublic schools back to the middle school(s), from which the School District would pick the students up and transport them to their homes.

On April 5, 2010, Parents filed a complaint for declaratory judgment and injunctive relief and a motion for emergency temporary restraining order in Marion Superior Court 6 before Judge Thomas Carroll. Parents' claims were almost identical to those of Archdiocese in its earlier lawsuit against the School District. On April 14, 2010, Lawrence Township filed its answer, wherein it asserted the affirmative defense of *res judicata.* Judge Carroll heard argument on the Parents' motion for emergency temporary restraining order on June 3, 2010. The matter proceeded to bench trial on June 22, 2010. In its open-

ing remarks, the School District moved to dismiss Parents' action as barred by the doctrine of *res judicata*. At the close of the evidence, Judge Carroll took the matter under advisement.

In its order of August 12, 2010, Judge Carroll entered findings of fact and conclusions thereon. He found that Parents' claims were, in fact, barred by the doctrine of *res judicata* because: (1) the former judgment was rendered, on the merits, (2) by a court of competent jurisdiction; (3) the matter in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action was between the parties to the present suit or their privies. As to the final element, Judge Carroll's order provided in pertinent part, as follows:

6. [Lawrence Township] asserts that the only difference in the first case and the second case is the naming of different plaintiffs. From the evidence it is clear that the plaintiff in the first case, [Archdiocese] and [Parents] are virtually one and the same. They are pursuing exactly the same lawsuit, to accomplish exactly the same result. All the relevant facts are the same and relief sought is the same.

7. The parents in the second case are clearly the privy of [Archdiocese] in the first case. [Parents] were sought out by the attorney for the Archdiocese to be plaintiffs, for the sole purpose of bringing this second action. The parents never sought independent counsel, nor were they ever advised to seek independent counsel. They were called to a meeting at the school by Mr. Mercer [counsel for Archdiocese], for the express purpose of soliciting them as plaintiffs. These parents are not paying any attorney fees, nor do they expect to ever pay any attorney fees. The Archdiocese is paying the attorney fees for Mr. Mercer.

There is no fee or engagement agreement between the parents and Mr. Mercer, and it is clear that Mr. Mercer is merely continuing to represent the interest of the Archdiocese. The Archdiocese is and was pursuing the interest of the parents. They are in essence privies of each other. The Plaintiff Renee Piper testified that no one among the parents even talked about asking for another attorney, and when asked why, Mrs. Piper stated, "I would assume because it is a school issue and it would be handled through the school." Mr. Mercer himself stated during the deposition of [Principal] Betty Popp, "there is no way to distinguish between the two (cases)."

8. It is clear there is no true diverse interest between the Archdiocese and the Plaintiff parents. Privity, for *res judicata* purposes, describes the relationship between person who are parties to an action and those who are not parties, but whose interest[s] in the action are such that they may nevertheless be bound by the judgment in that action. The term includes those who control an action, although not a party to it, and those whose interests are represented by a party to the action. *Dickson v. D'Angelo*, 749 N.E.2d 96 (Ind.App.2001). This statement from the [sic] *Dickson* fits squarely with the facts of this case. * * * The first case, although brought by the Archdiocese, was strictly for the benefit of the student[s] and the parents. The interest of the parties represented by Mr. Mercer, are identical in the first and second action.

(App.4–9).

"To the extent a reviewing court might disagree" with his determination that Parents' claim was barred under the doctrine of *res judicata*, (app.12), Judge Carroll also addressed the merits of Parents' claim and made the following pertinent findings:

## The Statute

11.  [ ] Indiana Code 20–27–11–1, in total, reads as follows:

(a) If a student who attends a nonpublic school in a school corporation resides on or along the highway constituting the regular route of a public school bus, the governing body of the school corporation shall provide transportation for the nonpublic school student on the school bus.

(b) The transportation provided under this section must be (**1. "The Pickup"**) from the home of the nonpublic school student or from a point on the regular route nearest or most easily accessible to the home of the nonpublic school student (**2. "The Delivery"**) to and from the nonpublic school or to and from the point on the regular route that is nearest or most easily accessible to the nonpublic school.

12. The "pick-up" of students in this case is not in dispute.  Lawrence [Township] agrees there are non-public students who live on a point on a regular route, and they are entitled to be picked up.

## The Delivery

13.  The "delivery" of these students is what is in question in this case.  In the past, Lawrence [Township] collected all of the non-public schools students, and transported them to three different middle schools.  From there, Lawrence [Township] then provided a separate shuttle bus from the public school directly to the two parochial schools involved.  This route from the middle schools was solely for the benefit of the parochial school students.  No public school students rode the shuttle bus from the middle schools to the two parochial schools.

14.  Lawrence [Township] believes that a clear reading of Section (b) of the statute does not require or mandate that the Schools provide these particular "delivery" routes, but rather Lawrence [Township] has the right to pick-up the students, and transport them later to either the parochial school, *or* to and from the point *on the regular route* that is nearest or most easily accessible to the non-public school.  Under this option the point that is nearest or most easily accessible to the non-public school can vary from time-to-time, and can vary from school to school.

15.  The Court agrees with Lawrence. This option must be Lawrence's election, otherwise, Lawrence could be required to establish and maintain routes anywhere and anytime desired by the parochial school students.

16.  The statute gives Lawrence [Township] the right to determine the point on the regular route that is nearest or most easily accessible to the non-public school.

17.  Mr. Smith, Director of Transportation, was asked at trial if he had selected or attempted to select a point on the regular route that was nearest or most easily accessible to the non-public school.  Mr. Smith testified he had not. However, it was stipulated that the bus route changes from time-to-time, that [Lawrence Township] has the right to change its bus routes from time-to-time, and there was no evidence that the final bus routes for the 2010–2011 school year had yet been selected.  The Court finds it was not necessary for Mr. Smith to have actually determined a point on the regular route that was nearest or most easily accessible to the non-public school in this case, because it is clear from all the evidence that [Lawrence Township] had made a determination that "the delivery" of the non-public school students

would be from their homes to the various Lawrence Township Schools, and that it is not necessary or required that [Lawrence Township] then also try to determine another point on the regular route which would be nearest or most easily accessible to the non-public school.

18. The Plaintiffs wish to construe the statute as requiring Lawrence [Township] to continue its shuttle service directly to the parochial schools. Plaintiffs, however, ignore the second part of the statute, which states that the School has to take the students to and from the non-public school *or* to or from the point *on the regular route* that is nearest or most easily accessible to the non-public school. Lawrence [Township] has the right to determine that its middle schools are the point on *the regular route* that is nearest the non-public school.

### Busses that Go by the Parochial School

19. The Plaintiffs suggest that during the course of any day as many as twenty different busses pass by the parochial schools in question. The assumption apparently is that these busses could be used to transport the students to the two parochial schools. The problem with this argument is that there are numerous reasons why this would not work logistically. Granted, Lawrence [Township] may have busses going by these schools, but obviously those buses would not necessarily be passing by the specific parochial school at the time need to accommodate their class starting time. The right mix of student on the right bus might not necessarily be the right busses at the right time to go by the parochial schools. It would further be inconvenient and disruptive to cause the Lawrence [Township] busses to turn into the parochial schools from 10 to 20 different times during the regular runs of those busses. Further, there would be other parochial school students who would not be on any of the busses passing by the parochial schools, so there would still need to be shuttle busses or other arrangements made for the middle schools to accommodate those students.

### Frame v. South Bend Community School

20. There is a 1985 Court of Appeals decision which supports the position of Lawrence Schools in this case. In *Frame v. South Bend Community School Corporation*, 480 N.E.2d 261 (Ind.App.1985), the Court held that no additional busses need to be put into service, and only existing routes and schedules had to be used. In *Frame*, the parents alleged that the statute denied them the right to send their children to private schools of their choice. It was the parents' position that this statute requires the school corporation to provide *all* additional transportation that is needed to transport their students to parochial schools. The Court disagreed. In *Frame* [,] the Court cited a 1936[sic] Attorney General Opinion, 1936 Opinion Attorney General, 415. In that Opinion, the Attorney General states that this last section of the statute, which is in question in our case, "neither requires no authorizes the school trustee or trustees to place any additional bus on the route in order to accommodate parochial pupils otherwise eligible for transportation."

21. Lawrence [Township] has in fact in the past revised or altered its bus routes to specifically accommodate parochial school children. Lawrence [Township] has decided it no longer wishes to do that. *Frame* supports the right to make that decision.

(App.13–17). Thus, the trial court entered its judgment in favor of Lawrence Township.

On August 27, 2010, Archdiocese moved to consolidate its appeal of its claim with that of Parents. In its order of September 9, 2010, the trial court granted the motion and ordered the appeals consolidated under cause number 49A02–1004–PL–427. Archdiocese and Parents (collectively "Appellants") now appeal.

Additional facts will be provided as necessary.

## DECISION

Appellants challenge the lower courts' judgments as erroneous and contrary to law. Specifically, they argue that Lawrence Township (1) is statutorily required "to continue the [shuttle bus] routes to provide transportation for the nonpublic school students to and from school without charge"; and (2) lacks the authority to "disregard the statutory requirement or to change the requirement to fit its budgetary needs."[5] Appellants' Br. at 12, 14. We disagree.

At issue herein is a matter of statutory interpretation concerning the nature and extent of Lawrence Township's obligation to provide transportation to nonpublic school students under Indiana Code section 20–27–11–1(b). Statutory interpretation is a question of law reserved for the court and is reviewed *de novo*. *In re Guardianship of E.N.*, 877 N.E.2d 795, 798 (Ind.2007). *De novo* review allows us to decide an issue without affording any deference to the trial court's decision. *Bader v. Johnson*, 732 N.E.2d 1212, 1216 (Ind. 2000).

The goal of statutory construction is to determine, give effect to, and implement the intent of the General Assembly. *Cox v. Cantrell*, 866 N.E.2d 798, 805 (Ind.Ct.App.2007). The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Campbell v. Board of School Com'rs of City of Indianapolis*, 908 N.E.2d 1234, 1237 (Ind.Ct.App.2009) (internal citations omitted). The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless indicated by statute. *Cantrell*, 866 N.E.2d at 805. If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.*

Given its responsibility for establishing school bus routes, including pickup and drop-off times and schedules for public and nonpublic school students alike, School District is an administrative agency charged with enforcing Indiana Code section 20–27–11–1. *See Board of School Com'rs of City of Indianapolis v. Walpole*, 801 N.E.2d 622, 624 (Ind.2004) (a school board may be regarded as acting as an administrative agency when it is "acting as a regulator, setting rates, or issuing licenses or otherwise affecting members of the public").

> When a statute is subject to different interpretations, the interpretation of the statute by the administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless that interpretation is inconsistent with the statute itself. When a court is faced

---

5. They also argue that Lawrence Township lacks the authority to charge a fee for transporting the nonpublic school students from the middle schools to their respective nonpublic schools. We need not address this claim because Lawrence Township concedes that it lacks the authority to "unilaterally impose a fee to either the non-public school or the non-public school parents, absent an agreement." Lawrence Township's Br. at 2.

with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, the court should defer to the agency. When a court determines that an administrative agency's interpretation is reasonable, it should "terminate [ ] its analysis" and not address the reasonableness of the other party's interpretation. Terminating the analysis recognizes "the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations."

*Indiana Department of Environmental Management v. Boone County Resource Recovery Systems, Inc.*, 803 N.E.2d 267, 273 (Ind.Ct.App.2004).

There is no dispute as to Lawrence Township's obligation under Indiana Code section 20–27–11–1(a) to provide transportation to nonpublic school students who reside on or near its regular school bus routes. Instead, the parties disagree as to the nature and extent of Lawrence Township's obligations under subsection (b), which provides:

> The transportation provided under this section must be from the home of the nonpublic school student or from a point on the regular route nearest or most easily accessible to the home of the nonpublic school student to and from the nonpublic school or to and from the point on the regular route that is nearest or most easily accessible to the nonpublic school.

■ Subsection 1(b) authorizes the School District to drop off nonpublic school students at either the nonpublic school or "the point on the regular route that is nearest or most easily accessible to the nonpublic school." I.C. § 20–27–11–1. Because the statute expressly contemplates an alternative drop-off point to the

nonpublic school, it cannot reasonably be construed as mandating the School District to deliver the nonpublic school students to the nonpublic schools. Taken further, nor can it reasonably be construed as requiring the School District to finance a course of action that it is not required to take—delivering the nonpublic students to the nonpublic schools.

In Appellants' brief, they argue emphatically that the School District is statutorily mandated to continue its long-standing practice of transporting the nonpublic school students to the nonpublic schools from the public middle school staging areas. Implicit in this argument is an acknowledgment that the public middle schools are a reasonable drop-off "point" for purposes of the statute. In their reply brief, however, Appellants assert for the first time that "[t]here is nothing in the record to show that the middle schools are the point on the regular route which is closest to the nonpublic schools. Rather, the middle schools are the point on the regular route which would be cheapest and easiest for [the School District]." Appellants' Reply Br. at 2. This new argument is waived. Appellants are not permitted to present new arguments in their reply briefs, and any argument an appellant fails to raise in his initial brief is waived for appeal. *See Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 593 n. 6 (Ind.2001); *see also* Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply brief.").

Notably, there is independent legal support for the lower courts' decision that the School District is not statutorily mandated to provide special shuttle bus services solely for the benefit of nonpublic school students, and to be responsible for the financial costs thereof. In *Frame v. South Bend Community School Corp.*, 480 N.E.2d 261 (Ind.Ct.App.1985), we analyzed

the substantially-similar I.C. 20–9.1–7–1.[6] In *Frame*, nonpublic school students and their parents appealed the trial court's determination that the local public school corporation was required to provide transportation to them on a seat-available basis only. The nonpublic school students and their parents maintained that the school district was statutorily mandated to meet their transportation needs. In affirming the trial court, we cited the following official opinion of the Attorney General regarding a similar statute[7] which was in effect in 1933:

> The Attorney General's opinion discussed the right of parochial pupils to free transportation when affording such transportation would require the use of an additional bus and the service of an additional bus driver. He stated:

> "It will be noted that the right of parochial pupils to free transportation, furnished by the proper school trustee or trustees, depends upon their residing 'on or along the highway constituting the regular route of a public school bus or conveyance.' In such event, it becomes the duty of the proper school trustee or trustees to furnish such parochial pupils free transportation 'by means of such school bus or conveyance.' The phrase last quoted obviously refers to the school bus or conveyance already being operated over such regular, established route, and neither requires nor authorizes the school trustee or trustees to place any additional bus on the route in order to accommodate parochial pupils otherwise eligible for transportation.

> *Apparently the legislature only intended to extend the privilege of free transportation to parochial pupils where they could be accommodated in the bus or conveyance already in use on such regular route,* as otherwise there would have been no purpose in inserting the limiting phrase, 'by means of such school bus or conveyance.' Conversely, if the legislature had intended to impose an unqualified duty on the respective school trustees to afford transportation for parochial school children, regardless of whether or not additional busses would be required for such purpose, then this result would have been accomplished simply by omitting the phrase in question.

> *... [I]t is my opinion that the proper school trustees are only obligated to furnish transportation for such number of them as can be accommodated in the school bus already in operation over the*

---

6. The statute provides,

"When school children who are attending a parochial school in any school corporation reside on or along the highway constituting the regular route of a public school bus, the governing body of the school corporation shall provide transportation for them on the school bus. This transportation shall be from their homes, or from some point on the regular route nearest or most easily accessible to their homes, to and from the parochial school or to and from the point on the regular route which is nearest or most easily accessible to the parochial schools.

I.C. § 20–9.1–7–1 (repealed).

7. Indiana Code section 28–2805 provided as follows:

"... Where school children who are attending any parochial school in any school corporation of this state reside on or along the highway constituting the regular route of a public school bus or conveyance, the school trustee shall afford transportation, without extra charge, by means of such school bus or conveyance, for the children attending any such parochial school, from their homes, or from some point on the regular route nearest or most easily accessible to their homes, to such parochial school, or to the point on such regular route which is nearest or most easily accessible to such parochial school."

*regularly established school route in question.* 1936 Op. Att'y Gen. 415.

480 N.E.2d at 264 (internal citations omitted) (emphasis added).

Subsequently, in 1980, the same legal question was presented to then-Attorney General Theodore Sendak, regarding a substantially-similar[8] statute. Sendak concluded:

> So long as a regular bus route is maintained by a school corporation, the governing body of that corporation shall provide transportation for the eligible parochial school children on the buses they operate. *It is not required that the school corporation revise the bus route to accommodate the parochial school children.* All that is required is that the school corporation provide transportation from some point nearest and most accessible to the home of children who are attending parochial school and to and from another point along the regular route nearest and most accessible to the parochial school.

1980 Ind. Op. Atty. Gen. 96 (emphasis added). Sendak further opined that the legislature "intended that the governing body of a school corporation may *not* deny transportation on its public school buses, *already in operation on routes already in existence,* to a parochial school student who resides on or along the highway constituting the regular route of a public school bus . . . ." *Id.*

The foregoing precedents reflect Indiana's goals of ensuring public safety and efficient allocation of public funds such that where a school district has already expended transportation resources that can benefit both nonpublic and public

school students, nonpublic school students should certainly benefit from the outlay; however, the school district is not required to undertake additional expenses, to revise its existing bus routes, or to otherwise devote its funds such that they accommodate only nonpublic school students in the manner they desire.

Lastly, at the hearings, the trial judges heard testimony from the School District's witnesses that Appellants' proposed interpretation of Indiana Code section 20–27–11–1 to mean that the School District must continue to provide free shuttle service to nonpublic school students would unduly burden the School District, requiring it to expend existing resources and to allocate new resources for the sole benefit of nonpublic school students.

School District Superintendent Concetta Raimondi testified (in the initial action) that the School District's transportation budget is in deficit and "[w]e've been having to use General Fund to cover it, [which] takes away funding from our teachers." (Tr. 38). She testified that the School District does not dispute its obligation to pick up nonpublic school students who reside on or along regular established bus routes, but takes issue with it being required to provide free shuttle bus service to the nonpublic students "from each middle school to the respective parochial school," when no public school students ride the shuttle. (Tr. 39). Lastly, she testified,

> I think that the statute was in place to allow public schools some flexibility if indeed there were additional costs to be borne for the service. The statute allows us not to provide the service [ ] if it

---

8. State Senator Charles Bosma asked whether, under IC § 20–9.1–7–1, a school corporation was entitled to deny transportation to a parochial school student whose parents were resident taxpayers of that school corporation, but who attended a school located outside the boundaries of the school corporation, where the student was able to get to a bus loading point within the corporation without any need for the bus to alter its scheduled route.

costs us more money than our regular routes, we should not have to extend ourselves beyond that.

(Tr. 40–41).

In addition, Transportation Director Smith testified that although numerous Lawrence Township buses pass the nonpublic schools during the course of a school day, it is neither logistically possible nor efficient for each bus to stop at a nonpublic school.[9] He also testified as to the School District's rationale for selecting the middle schools as the drop-off point.[10] In addition, Raimondi and Smith each testified that no public school students ride the shuttle buses from the public middle schools to the nonpublic schools; as such, the special shuttle bus routes from the public middle schools to the nonpublic schools constitute revisions of the School District's regular established bus routes to create a special bus route that accommodates only nonpublic school students.

The foregoing evidence established that for over a decade, the School District has borne all of the expenses associated with providing transportation for the school district nonpublic school students to the respective nonpublic schools. Based upon our review of the statutory language and existing legal precedent, we conclude that the School District's interpretation of Indiana Code section 20–27–11–1(b) is reasonable and consistent with its statutory duty of implementing the legislative aims thereof; as such, it is entitled to great weight. *See IDEM*, 803 N.E.2d at 273. Specifically, we believe that Indiana Code section 20–27–11–1 does not mandate that the School District must provide special school bus routes and free shuttle bus services not already in effect, for the sole benefit of nonpublic school students.[11]

Accordingly, because the Board is an administrative agency charged with enforcing Indiana Code section 20–27–11–1, we defer to its interpretation of the statute to mean that it is entitled to terminate the long-standing *voluntary* practice of providing free shuttle bus service to the respective nonpublic schools. We find no error

---

**9.** In this vein, counsel for Lawrence Township argued,

> There's too many factors that go into this. Necessarily, the school by that statute, has the right to pick that point [that is nearest or most easily accessible to the nonpublic school], and that point ... has to take into consideration who's on the bus when, how many stops are going to be made, ..., the starting times of all the various schools, the starting times of the middle schools don't necessarily coordinate with the starting times of the parochial schools, all of those things have to come into play, and Lawrence Schools has the right to determine what that is. (Tr. 77–78).

**10.** In cause number PL–001231, Smith testified as follows regarding the choice of the middle schools as the shuttle staging area:

> So one of the reasons they go to the middle schools is because of the time factor, and the reason they go to all three different middle schools is because they're spread throughout the entire district. And so we pick up kids in the neighborhood based on where those kids go to—which middle school and then from there shuttle them to the school. Because we'll have several buses from different areas that may all come to one middle school, so they're not all riding one bus.
>
> As a matter of fact, they could be riding up to seven buses that goes [sic] to Fall Creek Valley that has twenty-seven kids. So you're talking anywhere from one kid to eight students. And so that's by they all come to one middle school, that living in the Fall Creek Valley area, they get on then one shuttle bus that will then take all those students as a whole to the parochial school. The same thing at our other middle schools also.

(Tr. 61).

**11.** Our opinion herein should not be read as interfering with the parties' rights to enter into contracts for providing shuttle bus services in the future.

in the trial courts' denial of Appellants' claims for injunctive and declaratory relief.

Affirmed.[12]

NAJAM, J., and BAILEY, J., concur.

---

12. Inasmuch as Parents' and Archdiocese's claims are inextricably intertwined, we agree with Judge Carroll's determination that Parents' claim is barred by principles of *res judicata* in this case. Accordingly, because the School District Board is the administrative agency charged with the responsibility of enforcing Indiana Code section 20–27–11–1, we defer to its reasonable interpretation of the statute to mean that the School District is entitled to terminate its longstanding practice of providing free shuttle bus service to the nonpublic schools.